UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,      :
                                              90 Civ. 5129 (WCC)
                          Plaintiff,     :

           - against -                   :       **OPINION
                                                 AND ORDER**
SALIM B. LEWIS,                          :

                          Defendant.     :

- - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              OFFICE OF THE GENERAL COUNSEL
                              SECURITIES AND EXCHANGE COMMISSION
                              **Attorneys for Plaintiff**
                              100 F Street, NE
                              Washington, DC 20549

RICHARD M. HUMES,
  Associate General Counsel

MELINDA HARDY, ESQ.
  Assistant General Counsel

THOMAS J. KARR, ESQ.
  Special Trial Counsel

        Of Counsel

                              BAKER BOTTS, L.L.P.
                              1299 Pennsylvania Avenue, N.W.
                              Washington, D.C.  20004

JAMES R. DOTY, ESQ.
                                     - and -
        Of Counsel

                              LOWENSTEIN SANDLER PC
                              1251 Avenue of the Americas
                              New York, New York 10020

DOUGLAS S. EAKELEY, ESQ.
                                     - and -
        Of Counsel

**Copies Mailed to Counsel of Record_____**

**A P P E A R A N C E S :  (continued)**


                                    GIBBONS, DEL DEO, DOLAN,
                                      GRIFFINGER & VECCHIONE
                                    One Riverfront Plaza
                                    Newark, New Jersey 07102

LAWRENCE S. LUSTBERG, ESQ.

        Of Counsel          **Attorneys for Defendant**

**CONNER, Senior D.J.:**

On August 8, 1990, this Court issued a permanent "obey-the-law" injunction against defendant Salim B. Lewis requiring that he refrain from violating certain securities laws and that he disgorge $475,000. The injunction was granted pursuant to a consent decree and negotiated in resolution of a civil suit brought by the Securities and Exchange Commission ("S.E.C.") following criminal proceedings in which Lewis pleaded guilty to three counts of securities violations and was sentenced by Judge Mary Johnson Lowe to three years of community service in addition to payment of a substantial fine. Eleven years later, Lewis received a presidential pardon, and now, nearly twenty years after commission of the acts that led to his criminal and civil penalties, moves this Court to vacate the permanent injunction pursuant to FED. R. CIV. P. 60(b). Because we find the circumstances that warranted the injunction have changed significantly since it was issued, we vacate the permanent injunction.

## BACKGROUND

On May 8, 1986, Lewis, managing general partner of securities brokerage firm S.B. Lewis & Company, in conjunction with Boyd L. Jefferies, Chairman of the board of directors and Chief Executive Officer of securities brokerage firm Jefferies & Company, Inc. ("Jefferies"), arranged to purchase sufficient Fireman's Fund Corporation ("FFC") stock to cause the stock price to close at $38. (Complt. ¶¶ 8-12, 18; App., Ex. B.)[1] Lewis's actions were spurred by what he viewed as the

---

[1] Citations herein take the following form: "Complt. ¶ __" refers to the Complaint for Permanent Injunction and Other Equitable Relief filed with this Court on August 6, 1990; "Tr. __" refers to the consecutively paginated transcript of the oral argument held pursuant to defendant's Motion to Vacate; and "App. __" refers to the consecutively paginated appendix attached to defendant's Memorandum of Law in Support of Salim B. Lewis's Motion to Vacate Injunction.

unethical practice by arbitrageurs of short selling stock just prior to a public offering in an effort to drive down the offering price while covering the short at a lower price by making purchases in the offering, a practice known as "shorting the syndicate," the effect of which was to provide the arbitrageurs with a margin of profit.[2] (Tr. 10; App. 38-39, 81-82.) Indeed, Lewis was made aware of this practice in relation to FFC by his friend and colleague Howard Clark, Jr., then-Chief Financial Officer of American Express, which was in the process of issuing a secondary offering of FFC stock. (App. 80-81.) In an act of market vigilantism—in which Lewis in no way personally profited financially—Lewis arranged for Jefferies to purchase some 410,000 shares of FFC common stock for which Jefferies was reimbursed via a series of false invoices designed to mask the true reason for the payments. (Complt. ¶¶ 19, 24-28; Tr. 3, 10; App. 90-91, 139.) These purchases apparently did raise the stock price, causing it to close at $38, a price that necessarily affected the secondary offering price. (Complt. ¶ 20; App. 88.)

Lewis was later indicted on twenty-two counts of securities laws violations. (App., Ex. 1.B.) He pleaded guilty to three counts: one count of stock price manipulation in violation of Rule 10b-5; one count of false recordkeeping in violation of S.E.C. regulations; and one count of aiding and abetting margin regulation violations in contravention of rules prescribed by the Board of Governors of the Federal Reserve System. (App. 34-35; Tr. 10-11.) Though these counts each bore a maximum penalty of five years imprisonment and a combined financial penalty of $2.75 million

---

[2] This practice was subsequently outlawed by Rule 10b-21 under the Securities Exchange Act of 1934 (the "Exchange Act"). Rule 10b-21 was replaced by Regulation M, 17 C.F.R. § 242.105, which renders it unlawful "to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during the shorter of (1) The period beginning five business days before the pricing of the offered securities and ending with such pricing; or (2) The period beginning with the initial filing of such registration statement or notification on Form 1-A and ending with the pricing."

(App. 34-35), he was sentenced by Judge Lowe to pay a $250,000 fine and to serve three years

probation with community service to be performed at Daytop Village Drug Treatment Center. (App.

172-73; Tr. 11.)  This sentence was imposed in part due to "the uniqueness" of the crime, as well as

"the uniqueness" of Lewis, a man who, as Judge Lowe commented and as the record before this

Court reflects, has devoted his life to the selfless service of others.  (App. 168-74; Tr. 11-13.)

On August 6, 1990, eight months after imposition of the sentence, the S.E.C. brought a civil

action against Lewis seeking a permanent injunction from violating certain securities laws.  Pursuant

to a consent decree, this Court granted the injunction and required Lewis to disgorge $475,000.

(App., Ex. 2; Tr. 13.)  One week later, the S.E.C. issued a bar order, with Lewis's consent,

preventing Lewis from associating with any broker, dealer, investment company, investment adviser

or municipal securities dealer.[3]  (App., Ex. 3; Tr. 13.)

On January 20, 2001, President William Jefferson Clinton granted Lewis a full and

unconditional pardon.[4]  (App., Ex. 6.)  Lewis subsequently petitioned the S.E.C. to vacate the bar

order in light of the pardon.   The S.E.C. lifted that part of the order precluding Lewis from

associating with investment companies, investment advisers and municipal securities dealers, but

maintained the bar against associating with brokers and dealers. (App., Ex. II at 13.) Lewis appealed

the S.E.C.'s modified bar order to the Court of Appeals for the District of Columbia, which stayed

---

[3] There is no evidence in the record suggesting that Lewis at any time failed to comply with either the injunction or the bar order.

[4] Although this pardon was one of a large number granted on January 20, 2001—President Clinton's last full day in office—and many of the other pardons have been widely criticized for suspected bribery or undue influence, there is no evidence in the record suggesting that Lewis's pardon was anything other than a bona fide pardon on the merits.

decision pending this Court's ruling on the motion to vacate the permanent injunction.[5] (Def. Reply

Mem. Supp. Mot. Vacate, Ex. A.)


## DISCUSSION

### I. Standard of Review

Under FED. R. CIV. P. 60(b), a court may vacate or modify a final judgment or order where

"it is no longer equitable that the judgment should have prospective application; or [for] any other

reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b)(5), (6). While

a district court bears discretion in deciding a motion for vacatur,[6] we proceed cautiously, mindful

that releasing a party from a permanent injunction is "an extraordinary remedy, as would be any

device which allows a party . . . to escape commitments voluntarily made and solemnized by a court

decree." *Nat'l Labor Relations Bd. v. Harris Teeter Supermarkets*, 215 F.3d 32, 35 (D.C. Cir. 2000)

(internal quotation omitted).

In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992), the Supreme Court

established the standard by which courts examine Rule 60(b) motions: modification or vacatur

---

[5] The parties agree that, following the presidential pardon, the only remaining basis for maintaining the bar order is the permanent injunction. (Tr. 14, 20.)

[6] According to the Second Circuit, Rule 60(b)(6) "'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case.'" *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986), *cert. denied*, 480 U.S. 908 (1987) (internal citations and quotations omitted)). However, "[r]elief under Rule 60(b)(6) should not be granted casually, but rather is properly invoked only where there are extraordinary circumstances justifying relief, when the judgment may work an extreme hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 Civ. 9671, 1992 WL 51567, at *6 (S.D.N.Y. Mar. 9, 1992).

"may be warranted when changed factual conditions make compliance with the decree substantially more onerous"; "when a decree proves to be unworkable because of unforeseen obstacles"; "or when enforcement would be detrimental to the public interest." *Id.* at 384. Courts recognize that *Rufo* is a flexible standard applicable to noninstitutional reform contexts. *See*, *e.g.*, *Harris Teeter*, 215 F.3d at 35; *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 13 F.3d 33, 37, 38 (2d Cir. 1993) (affirming this Court's adoption of the more flexible *Rufo* standard to a noninstitutional reform action).

Defendant's primary reason supporting vacatur is his receipt of a presidential pardon. He asserts the pardon represents a significant change in circumstance that, when coupled with the passage of twenty years since the commission of his crime as well as his continued exemplary record of selfless service, warrants vacatur. The S.E.C., on the other hand, contends the standard for vacatur under *Rufo* is a stringent one not satisfied by a pardon or otherwise.

"A presidential pardon relieves the offender of all punishments, penalties, and disabilities that flow directly from the conviction . . . ." Walter Dellinger, *Effects of a Presidential Pardon*, 19 Op. Off. Leg. Counsel 160, 162 (June 19, 1995). Yet it does not "prohibit all *consequences* of a pardoned conviction, but rather preclude[s] future *punishment* for the conviction." *Hirschberg v. Commodity Futures Trading Comm'n*, 414 F.3d 679, 682 (7th Cir. 2005) (emphasis in original). Rather, contrary to popular belief, modern caselaw holds that a pardon "in no way reverses the legal conclusion of the courts; it 'does not blot out guilt or expunge a judgment of conviction.'" (quoting *In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994)); *Burdick v. United States*, 236 U.S. 79, 94 (1915) (a pardon necessarily "carries an imputation of guilt").

The S.E.C. does not—and indeed cannot—contend that the pardon fails to constitute a

changed factual condition.  Instead, the S.E.C. argues that the pardon, given the caselaw, does not

affect the permanent injunction under *Rufo*'s three prongs.  Under an inflexible application of the

*Rufo* standards, we would be inclined to agree.[7]  However, Lewis's pardon is only one changed

factual condition.  The imposition of the bar order by the S.E.C. after this Court issued the

injunction—without knowledge that the S.E.C. contemplated such action—is another changed

factual condition, as is the S.E.C.'s refusal to lift the bar order in its entirety some fifteen years later.

The appropriateness of the permanent injunction was "a temporal one," issued without the foresight

of future events.  *Gavin v. Branstad*, 122 F.3d 1081, 1088 (8th Cir. 1997).  The passage of some

twenty years since Lewis committed his crime, during which time he has maintained continued

compliance with the law, and therefore, the injunction, is not to be ignored.[8] *See S.E.C. v. Coldicutt*,

258 F.3d 939, 943 (9th Cir. 2001) (holding that "an extended period of compliance is a factor

supporting termination of an injunction," though not sufficient in and of itself).

More importantly, the permanent injunction and bar order appear to represent little more than

continued punishment, something a pardon clearly prohibits.  The injunction requires only that Lewis

"obey the law" if he engages in future securities trading—a requirement to which he would be

subject in any event.  Although dissolution eliminates the S.E.C.'s ability to institute contempt

---

[7] Of course, strict adherence to the *Rufo* requirements would result in the inability ever to vacate an "obey-the-law" injunction, since such an injunction mandating only compliance with the law could never satisfy those requirements.  Such a result seems inappropriate in view of this Court's broad equitable powers.

[8] The S.E.C. argues that by failing to accrue a record of "active compliance," *i.e.*, obtaining a temporary exemption from the bar order during which time Lewis could associate with broker/dealers in order to prove his compliance with the securities laws, his failure to violate the bar order or injunction by surreptitious means should have no effect on the decision of this Court.  We are not so persuaded.

proceedings against Lewis in the event—however unlikely—he were to violate securities laws, the S.E.C. retains its right to prosecute criminally or proceed civilly if need be. *See S.E.C. v. Warren*, 583 F.2d 115, 121 (3d Cir. 1978). While the S.E.C. has expressed concerns that vacating the injunction in the instant action threatens the validity of one of its most important enforcement mechanisms, we find that the unique factual circumstances of this case assuage any such concern. Not only has Lewis received a presidential pardon, but federal regulations now outlaw the very practice that his actions were designed to thwart.

Certainly, by vacating the injunction this Court neither condones nor rewards the vigilantism that led to Lewis's criminal conviction and civil penalty, yet we cannot ignore the inequity inherent in maintaining the injunction given the changed factual conditions of his case.

## CONCLUSION

For all of the foregoing reasons, defendant Salim B. Lewis's motion is granted, and the permanent injunction issued by this Court on August 8, 1990 is hereby vacated in its entirety.

SO ORDERED.

Dated: White Plains, New York
      March 29, 2006

*William C. Conner*
Sr. United States District Judge